IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **JESSE KYLE HAND,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. CIV-22-566-STE |
| ) | |
| **KILOLO KIJAKAZI,** ) | |
| **Acting Commissioner of the Social** ) | |
| **Security Administration,** ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration denying Plaintiff's applications for disability insurance benefits under the Social Security Act. The Commissioner has answered and filed a transcript of the administrative record (hereinafter TR. ____). The parties have consented to jurisdiction over this matter by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c).

The parties have briefed their positions, and the matter is now at issue. Based on the Court's review of the record and the issues presented, the Court **REVERSES AND REMANDS** the Commissioner's decision.

### I.     PROCEDURAL BACKGROUND

Initially and on reconsideration, the Social Security Administration denied Plaintiff's applications for benefits. Following an administrative hearing, an Administrative Law Judge (ALJ) issued an unfavorable decision. (TR. 10-26). The Appeals Council denied

Plaintiff's request for review. (TR. 1-3). Thus, the decision of the ALJ became the final decision of the Commissioner.

## II. THE ADMINISTRATIVE DECISION

The ALJ followed the five-step sequential evaluation process required by agency regulations. *See Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); 20 C.F.R. §§ 404.1520 & 416.920. At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since May 10, 2019, the amended alleged onset date. (TR. 12). At step two, the ALJ determined Mr. Hand suffered from the following severe impairments: post traumatic stress disorder (PTSD); depression, anxiety disorder, attention deficit disorder, attention deficit hyperactive disorder (ADHD); and personality disorder. (TR. 13). At step three, the ALJ found that Plaintiff's impairments did not meet or medically equal any of the presumptively disabling impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1 (TR. 13).

At step four, the ALJ concluded that Mr. Hand retained the residual functional capacity (RFC) to:

> [P]erform a full range of work at all exertional levels but with the following non-exertional limitations:
>
> Due to mental impairments, the claimant is capable of doing only unskilled work consisting of simple and routine tasks with routine supervision that require only that he be able to understand, remember and carry out simple instructions. The claimant can maintain concentration and persist for 2-hour periods during the workday with normally scheduled work breaks between periods. The claimant can relate to supervisors and coworkers on a superficial and work-related basis with occasional contact and can adapt to a work situation. The claimant, as part of his routine job duties, should work at his own workstation or location independently performing his own tasks,

> without having to directly interact with coworkers to perform those tasks. The claimant should not work at jobs where changes in work routine occur on a regular basis, or where changes in routine are regularly made under circumstances where there is usually little or no notice or opportunity to adjust. No contact with the general public. The claimant will, on average of 2-3 times per year, be late for work, have to leave work early, or miss work entirely due to his mental health symptoms.

(TR. 15).

With this RFC, the ALJ concluded that Plaintiff was not capable of performing his past relevant work. (TR. 24). As a result, the ALJ presented the RFC limitations to a vocational expert (VE) to determine whether there were other jobs in the national economy that Plaintiff could perform. (TR. 65-66). Given the limitations, the VE identified three jobs from the Dictionary of Occupational Titles (DOT) that Plaintiff could perform. (TR. 66-67). The ALJ then adopted the VE's testimony and concluded, at step five, that that Mr. Hand was not disabled based on his ability to perform the identified jobs. (TR. 25-26).

### III. ISSUES PRESENTED

On appeal, Plaintiff alleges error in the ALJ's evaluation of a medical opinion and evidence. (ECF No. 19:11-15).

### IV. STANDARD OF REVIEW

This Court reviews the Commissioner's final decision "to determin[e] whether the Commissioner applied the correct legal standards and whether the agency's factual findings are supported by substantial evidence." *Noreja v. Commissioner, SSA*, 952 F.3d. 1172, 1177 (10th Cir. 2020) (citation omitted). Under the "substantial evidence" standard,

3

a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). "Substantial evidence . . . is more than a mere scintilla . . . and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. at 1154 (internal citations and quotation marks omitted).

While the court considers whether the ALJ followed the applicable rules of law in weighing particular types of evidence in disability cases, the court will "neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Vigil v. Colvin*, 805 F.3d 1199, 1201 (10th Cir. 2015) (internal quotation marks omitted).

## V. THE ALJ'S CONSIDERATION OF MEDICAL OPINIONS AND EVIDENCE

Mr. Hand alleges error in the ALJ's failure to properly evaluate: (1) a report from consultative examining physician Dr. Sidney Williams and (2) a letter from licensed professional counselor Kaye McCarty. The Court agrees, but only with regard to Dr. Williams.

### A. Governing Legal Definitions and Regulatory Standards

The Social Security Administration has defined categories of evidence, including, as pertinent here, "medical opinions," and "other medical evidence." *See* 20 C.F.R. §§ 404.1513(a)(2), (3) & 416.913(a)(2), (3). The regulations define a "medical opinion" as "a statement from a medical source about what an applicant can still do despite his

impairment(s) and whether he has one or more impairment-related limitations involving the:

> (A) Ability to perform physical demands of work activities, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping, or crouching);
>
> (B) Ability to perform mental demands of work activities, such as understanding; remembering; maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, co-workers, or work pressures in a work setting;
>
> (C) Ability to perform other demands of work, such as seeing, hearing, or using other senses; or the
>
> (D) Ability to adapt to environmental conditions, such as temperature extremes or fumes.

20 C.F.R. §§ 404.1513(a)(2); 416.913(a)(2).

For claims filed after March 27, 2017, such as those filed by Mr. Hand,[1] the regulations provide that the Commissioner no longer will "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)[.]" 20 C.F.R. §§ 404.1520c(a); 416.920c(a). Instead, the ALJ need only articulate how persuasive he finds the medical opinion. 20 C.F.R. §§ 404.1520c(b); 404.920c(b). Persuasiveness is determined primarily by an opinion's supportability and consistency, and the ALJ must explain how he considered those factors. 20 C.F.R. §§ 404.1520c(b)(2) & (c)(1)-(2); 416.920c(b)(2) & (c)(1)-(2). The ALJ's rationale must be "sufficiently specific" to permit

---

[1] *See* TR. 10.

meaningful appellate review. *See Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007).

The regulations define "other medical evidence" as "including judgments about the nature and severity of [a claimant's] impairments, . . . medical history, clinical findings, diagnosis, treatment prescribed with response, or prognosis." 20 C.F.R. §§ 404.1513(a)(3) 416.913(a)(3); *Duran v. Berryhill*, No. CIV-18-50, 2019 WL 1370101, *9 (D. N.M. March 26, 2019) (report containing results and interpretation of standardized tests, a summary of information claimant provided in a behavioral rating, diagnoses and recommendations were not medical opinions under 2017 regulations). When evaluating "other medical evidence" the ALJ is not required to consider the "medical opinion" factors listed above. *See supra*; *see M.H. v. Kijakazi*, No. 1:21-CV-01797-CNS, 2023 WL 2401063, at *5 (D. Colo. Mar. 8, 2023) ("The ALJ is not required to articulate the persuasiveness of other medical evidence with reference to supportability and consistency.").

### B.     Dr. Williams' Report

On February 13, 2019, Dr. Sidney Williams performed a consultative physical examination of Plaintiff. (TR. 617-623). In a report detailing his findings, Dr. Williams stated that Plaintiff had a history of his right hand being fractured and operated on twice, and that on examination, Mr. Hand had observable trouble picking up coins due to lack of finger coordination on his right hand. (TR. 619). Ultimately Dr. Williams stated that with his right hand, Plaintiff could not:

- Effectively oppose the thumb to fingertips;
- Manipulate small objects; or
- Effectively grasp tools, such as a hammer.

(TR. 622). In his narrative, Dr. Williams stated that Mr. Hand "has trouble with fine manipulation . . . [and] demonstrates that he has trouble opposing the right thumb to the tip of the 5th digit." (TR. 617).

Twice in the decision, the ALJ acknowledged Dr. Williams' report, but discounted it, noting the report: (1) "d[id] not contain an opinion of the claimant's physical functioning" and (2) the report pre-dated the amended alleged onset date, and was, therefore, "not pertinent to the period of disability in question." (TR. 17, 23).

Plaintiff argues that the ALJ erred in evaluating the report from Dr. Williams and the Court agrees. (ECF No. 19:11-13). Dr. Williams offered medical opinions regarding Plaintiff's abilities to engage in fine manipulation with his right hand and the ALJ was obliged to consider the opinion and evaluate its persuasiveness. *See supra*. The ALJ's failure to do so constitutes legal error. The Commissioner agrees that the ALJ "technical[ly]" erred, but argues that the error was harmless. (ECF No. 23:4-7). In support of her argument, Ms. Kijakazi offers three arguments, but none of them are persuasive.

First, Defendant cites a Northern District of Ohio case as authority that "[f]ailure to analyze an opinion that predates the alleged onset date is not per se reversible error." (ECF No. 23:5). However, the caselaw in this Circuit is clear that the ALJ should consider medical evidence and opinions that predate the disability date. *Hamlin v. Barnhart*, 365

F.3d 1208, 1215 (10th Cir. 2004) ("[E]ven if a doctor's medical observations regarding a claimant's allegations of disability date from earlier, previously adjudicated periods, the doctor's observations are nevertheless relevant to the claimant's medical history and should be considered by the ALJ."); Reeves v. Kijakazi, No. CIV-20-491-AMG, 2021 WL 5354104, at *3 (W.D. Okla. Nov. 16, 2021) ("Although this record is from nearly two years prior to the alleged onset date, it is still relevant, and the ALJ should have addressed it.") (citing Hamlin); Howry v. Saul, No. CIV-18-1004-STE, 2019 WL 4739687, at *3 (W.D. Okla. Sept. 27, 2019) (citing Hamlin).

Next, Defendant relies on:

- the fact that at the hearing, Plaintiff's attorney elicited no testimony from Plaintiff regarding his hand and when the ALJ stated that he believed Plaintiff was capable of doing "significant physical and exertional work," Plaintiff's attorney stated that he concurred with the judge's statement and said, "[i]t is a psychological case"[2] and

- Dr. Williams' opinion was inconsistent with other medical evidence regarding Plaintiff's hand.

(ECF No. 23:5-7). The Court finds the Commissioner's arguments unavailing because the ALJ himself did not rely on these rationales when discussing Dr. Williams' opinion, and the Court may not do so now. See Haga v. Astrue, 482 F.3d 1205, 1207 (10th Cir. 2007) ("[T]his court may not create or adopt post-hoc rationalizations to support the ALJ's decision that are not apparent from the ALJ's decision itself."); Hackett v. Barnhart, 395 F.3d 1168, 1173 (10th Cir. 2005) (the Court should not "substitute [its] judgment for that

---

[2] See TR. 49.

8

of the Commissioner.").³ The ALJ committed legal error in the evaluation of Dr. Williams' opinion and the error warrants remand.⁴

### C. Ms. McCarty's Letter

On December 20, 2018, licensed professional counselor Kaye McCarty wrote a letter on Plaintiff's behalf, detailing her treatment of Mr. Hand and providing information regarding his various mental health limitations and their possible effect on his employment. (TR. 608-609). Ms. Kaye wrote:

> [Mr. Hand's] inability to maintain employment is due largely to the effects of severe ADHD and Anxiety. The ADHD affects his concentration and his ability to focus and thus be productive. His impulsivity due to ADHD, impacts his work also. The mood ability that accompanies ADHD makes it very difficult for him to handle relationships at work with co-workers and managers. It also has caused him to have some encounters with law enforcement. These legal issues additionally impair his ability to pass background checks.

---

³ The Commissioner cites to a reference from the ALJ regarding the fact that Mr. Hand's records do not reflect any ongoing treatment for a physical impairment. *See* ECF No. 23:6, TR. 23. However, the ALJ provided this rationale as a basis for adopting prior administrative findings from disability physicians regarding the lack of a severe physical impairment, *not* for rejecting the opinion of Dr. Williams. Although adoption of the DDS opinions would seem to further support Defendant's position, the ALJ did not expressly state that he was rejecting Dr. Williams' opinions in favor of the DDS opinions, which he could have done, and which would have fulfilled his duties under 20 C.F.R. §§ 404.1520c(b)(2) & (c)(1)-(2); 416.920c(b)(2) & (c)(1)-(2).

⁴ The error would not be considered harmless because of the potential conflict between Dr. Williams' opinion and the three jobs the ALJ relied on at step five, all of which require some level of "fingering," or "handling." *See* TR. 25; DOT # 581.686-018 (garment hanger); DOT # 381.687-018 (janitor); and DOT # 559.687-074 (inspector/canned packager). Although Dr. Williams stated that Plaintiff's primary problem seemed to be fine manipulation with his right fingers—i.e.—"fingering," Dr. Williams also stated that Plaintiff could not effectively grasp a hammer, which would indicate some level of "handling." See TR. 622; SSR 85-15, 1985 WL 56857, at *7 (1985) (defining "handling" as "seizing, holding, grasping, turning or otherwise working primarily with the whole hand or hands" and "fingering" as "involve[ing] picking, pinching, or otherwise working primarily with the fingers.").

(TR. 608). The ALJ acknowledged the letter from Ms. McCarty, but found it unpersuasive, stating:

> The undersigned is not persuaded by the letter from Kaye McCarty, LPC, at Exhibit 5F because she did not provide any limitations in vocational [sic] relevant terms. She just gave a history of the treatment with her and what problems are caused by his diagnosis. In addition, she also attributed his inability to get a job based on his legal issues limiting his ability to pass background checks which is not a consideration for disability. Her reports would not be completely consistent with the claimant's activity at that time as the claimant continued to work at SGA level until the second quarter of 2019. Considering this, the undesigned is not persuaded by Kaye McCarty's opinions.

(TR. 24).

Plaintiff urges legal error in the consideration of the letter from Ms. McCarty, arguing that the ALJ failed to properly evaluate its persuasiveness by examining the factors of supportability and consistency. *See* ECF No. 19:13-15; *see supra*. In doing so, Plaintiff also criticizes the ALJ for failing to evaluate the evidence from Ms. McCarty as consistent with the evidence as a whole, citing various records from other medical sources. (ECF No. 19:14-15).

The Court rejects Plaintiff's argument for the simple fact that it hinges on a finding that Ms. McCarty's letter qualifies as a "medical opinion" as defined by the regulations. *See supra*. It does not. As noted, a "medical opinion" is "a statement from a medical source about what an applicant can still do despite her impairment(s) and whether he has one or more impairment-related limitations involving [various abilities]." *See supra*. But Ms. McCarty's letter is considered "other medical evidence," as Ms. McCarty never addresses what Plaintiff could still do despite his impairments. *See T.E. v. Commissioner,*

*Social Security Administration*, No. 1:21-cv-02274-CNS, 2023 WL 2661615, at *3 (D. Colo. Mar. 28, 2023) (noting that a report from a physician did not constitute a "medical opinion" because the physician "did not provide any particular manipulative limitations or address what [the claimant] could still do despite his diagnoses.").

Ms. McCarty offered four primary statements in her letter: (1) Plaintiff's inability to maintain employment is due to ADHD and Anxiety, (2) Plaintiff's ADHD "affects his concentration and his ability to focus and be productive," (3) Plaintiff's impulsivity "impacts his work," and (4) Plaintiff's "difficult[y]" in handling relationships with co-workers and supervisors. *See* TR. 608. These statements are not "medical opinions" because they do not specify what Plaintiff "can still do despite [his] impairment(s)." 20 C.F.R. §§ 404.1513(a)(2); 416.913(a)(2). Instead, these statements are considered "other medical evidence" because they are "judgments about the nature and severity of [Plaintiff's] impairments," diagnoses, and prognoses. *Id.* (a)(3). They are still statements that the ALJ had to consider but not necessarily discuss. *See Mounts v. Astrue*, 479 F. App'x 860, 866 (10th Cir. 2012) (noting there is a "difference between what an ALJ must consider as opposed to what he must explain in the decision."); *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996) ("The record must demonstrate that the ALJ considered all of the evidence, but an ALJ is not required to discuss every piece of evidence.").

Here, the record is clear that the ALJ did consider the letter, which is all he was required to do. The Court finds no error with regard to the ALJ's consideration of the letter from Ms. McCarty.

11

Case 5:22-cv-00566-STE   Document 25   Filed 04/27/23   Page 12 of 12

12

## ORDER

The Court has reviewed the medical evidence of record, the transcript of the administrative hearing, the decision of the ALJ, and the pleadings and briefs of the parties. Based on the forgoing analysis, the Court **REVERSES AND REMANDS** the Commissioner's decision.

ENTERED on April 27, 2023.

SHON T. ERWIN
UNITED STATES MAGISTRATE JUDGE